IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CV-000461-FL

| MATTHEW CORZINE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| U.S. ARMY, BRIGADIER GENERAL FORATER, LIEUTENANT GENERAL JOHN DOE #1, MAJOR ELIZABETH KINZIE, SECOND LIEUTENANT COCHORAN, SARGENT MORE, FIRST SARGENT JOHN DOE #2, SARGENT JOHN DOE #3, SARGENT JOHN DOE #4, SPECIALIST JOHN DOE #5, SPECIALIST JOHN DOE #6, PRIVATE JOHN DOE #7, PRIVATE JOHN DOE #8, PRIVATE JOHN DOE #9, PRIVATE JOHN DOE #10, | ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motion to dismiss (DE # 41), to which plaintiff responded (DE # 47). Defendants submitted a reply to plaintiff's response (DE # 51), and plaintiff has moved for leave to respond to the reply (DE # 53). In this posture, the matter is ripe for adjudication. For the following reasons, the court grants plaintiff's motion to respond to the reply and grants defendants' motion to dismiss.

**STATEMENT OF CASE**

On August 30, 2011, plaintiff filed a <u>Bivens</u> complaint against defendants while incarcerated, alleging several constitutional violations (DE # 1). <u>Bivens v. Six Unknown Named Agents of Fed.</u>

Bureau of Narcotics, 403 U.S. 388 (1971). Although the complaint was filed after the applicable statute of limitations had run, this court found that the initial pleadings passed frivolity review and granted plaintiff's motion to proceed *in forma pauperis* in order to give both parties the opportunity to expand the record on the evidence relevant to the complaint (DE # 12). Defendants' now move to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction under the Federal Rules of Civil Procedure. Upon review of the parties' briefs, this court finds that it lacks subject matter jurisdiction to entertain plaintiff's Bivens complaint.

## STATEMENT OF THE FACTS

Plaintiff alleges several incidents in mid-January through February 2005, while he was enlisted in the Army and stationed at Fort Bragg, for which he seeks relief. First, plaintiff alleges he was verbally assaulted and threatened with knives and firearms while placed on unit restriction. (Compl. 7.) Plaintiff was told that he would be dead on the next training exercise and that if he did not "keep his mouth shut . . . they would get physical next time." (Id.) The aggressors were members of plaintiffs platoon acting under the orders of defendants Second Lieutenant Cochoran and First Sargent John Doe #2. (Id.)

Second, plaintiff was physically restrained under the order of defendants Cochoran, Sargent More and Doe #2, and tortured by the same, plus other officers and infantrymen in plaintiff's platoon. (Id. at 8.) "The torture consisted of punches, slaps, assaults with a phone book and other miscellaneous implements." (Id.) Plaintiff was continually abused and tortured for two days. (Id.) When he was finally released to the hospital, plaintiff "was threatened to keep his mouth shut or they would get him and finish the job." (Id. at 7-8.) Plaintiff was admitted to the hospital "covered in feces, urine and blood." (Id. at 9.) He was treated for "bruises, lacerations [and] broken bones."

(Id.)

Third, plaintiff was verbally threatened while he was staying in the Army medical hospital for those injuries. (Id. at 8-10.) Defendant Forater stated that plaintiff "had better shut up about the incident or else." (Id. at 10.) Plaintiff was told that he was being discharged, and "if he didn't shut up the general would make sure his discharge was changed to a dishonorable one." (Id.) Fourth, plaintiff claims that many of the individual defendants involved in the physical abuse removed him from the hospital during the course of his treatment, at which time they would continue to threaten and torture plaintiff. (Id. at 12.) Defendants U.S. Army, Forater and Lieutenant General John Doe #1 covered up the abuses and did not provide plaintiff with any protection. (Id.)

Finally, plaintiff contends that defendants Cochoran and More ordered unit members to visit plaintiff's off-base house. (Id. at 14.) They took his laptop computer and files containing information about "the threats torture and abuse." (Id.) Furthermore, they "destroyed an antique handmade baby crib that was a family heirloom." (Id.) Other than the alleged theft and destruction of property, all of the incidents described by plaintiff occurred on base at Fort Bragg.

## DISCUSSION

Defendants argue, among other things, that this court lacks subject matter jurisdiction because the Feres doctrine, named after the Supreme Court decision Feres v. United States, 340 U.S. 135 (1950), bars plaintiff's Bivens suit where plaintiff was an enlisted service member at the time of the alleged violations. (Mem. in Supp. Of Mot. To Dismiss; Reply.) On that topic, Plaintiff argues that the Feres doctrine does not apply because the injuries were not incident to service. (Opp'n to Mot. to Dismiss; Resp. to Reply.) Therefore, he contends, this court has subject matter jurisdiction. For the reasons stated below, the court grants defendants' motion to dismiss for lack

3

of subject matter jurisdiction under the Feres doctrine.[1] With respect to plaintiff's motion for leave to respond to defendant's reply, the court grants the motion, where defendant's reply expands upon its argument for dismissal under the Feres doctrine, and plaintiff's response to the reply is helpful to resolution of this jurisdictional ground for dismissal.

A.  Standard of Review

Defendants move to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Subject matter jurisdiction may be challenged at any time, and if it is lacking the case must be dismissed. See Fed. R. Civ. P. 12(h)(3). The plaintiff has the burden of establishing jurisdiction. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). Where defendants, as here, make a facial challenge to subject matter jurisdiction, the factual allegations from the complaint are presumed true. Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.1982)).

B.  Analysis

The Feres doctrine or "incident to service" test is derived from a 1950 Supreme Court decision consolidating three cases brought under the Federal Tort Claims Act ("FTCA"). See Feres v. United States, 340 U.S. 135, 137-38 (1950). All three cases were based upon negligence claims where claimants were injured, "while on active duty, and not on furlough, [by] others in the armed forces." Id. at 138. The Supreme Court held that the federal government had no liability "for injuries to servicemen where the injuries arise out of or are in the course of

---

[1] Because the court lacks subject matter jurisdiction on this basis, the court does not reach defendant's alternative grounds for dismissal, including the statute of limitations. The Fourth Circuit has instructed that a Bivens action should not be decided on statute of limitations grounds without first considering subject matter jurisdiction. Reinbold v. Evers, 187 F.3d 348, 360 n.10 (4th Cir. 1999).

activity incident to service," and all three claims were dismissed. Id. at 146.

In 1987, the Supreme Court held that the same "incident to service" test would apply to claims brought under Bivens. See United States v. Stanley, 483 U.S. 669, 681-82 (1987) (barring Bivens claims for damages against military and civilian officials for injuries resulting from the military's intentional administration of LSD to unwitting volunteer). The Feres doctrine is in place to protect congressional authority over the United States' military establishment under the Constitution. See Chappell v. Wallace, 462 U.S. 296, 300-302 (1983). The appropriate forum for relief when a soldier is injured during service is to pursue a claim within military structures, such as under the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. §§ 801-946, or through administrative channels. Id. at 302-303.

Bivens held that "a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." Bivens, 403 U.S. at 389. Generally, a Bivens claim may not be brought against the United States military because there are "special factors counseling hesitation." Id. at 396; see also Stanley, 483 U.S. at 669 (explaining that the Feres doctrine guides the court in determining when a Bivens claim may be brought in a military context). The rationales for using the incident to service test to protect the military from Bivens claims are: (1) the "distinctively federal" relationship between the government and its soldiers would be undermined by holding military personnel accountable under state tort law; (2) "the comprehensive system of statutory benefits granted to service members [are intended by Congress] to be the sole remedy for service related injuries;" and (3) "the fear that frequent judicial inquiry into military decision making would have a deleterious impact on military discipline and effectiveness." Appelhans v. United States, 877 F.2d 309, 311

5

(4th Cir. 1989).

The incident to service test has been used in the Fourth Circuit to bar claims based on injuries incurred during active service and based upon injuries inflicted where defendants are in the military. See Hass v. United States, 518 F.2d 1138, 1140 (4th Cir. 1985). If the activities complained of occur on a military base, that also counsels toward barring the action under Feres. See Stewart v. United States, 90 F.3d 102, 104-105 (4th Cir. 1996). Furthermore, the Feres doctrine is broad enough to include "'all injuries suffered by military personnel that are even remotely related to the individual's status as a member of the military.'" Id. at 105 (quoting Major v. United States, 835 F.2d 641, 644 (6th Cir. 1987)). Thus, the Fourth Circuit has considered the rationales behind the incident to service test, as dictated by the Supreme Court, to bar most military service-based claims. Appelhans, 877 F.2d at 311.

Applying these principles here, the Feres doctrine bars plaintiff's claim on the facts asserted. In this case, plaintiff admittedly was on active duty at the Fort Bragg military base at the time of the alleged incidents. (See Compl.7, 9, 12-14; Resp. to Defs.' Reply 2.) He alleges intentional harms were committed against him while he was enlisted, by officers and infantry in the Army. (See Compl.2-14.) The specific harms plaintiff suffered were allegedly ordered by his superior officers, and most of the incidents took place under their supervision. (Id. at 7-10, 12, 14.) Plaintiff even received medical care in a military hospital for his physical injuries. (Compl. 9, 14; Resp. to Defs.' Reply 2.) Plaintiff admits that he was on "active duty, was not on furlough, [and] was on a military base" during all of the alleged offenses. (Resp. to Defs.' Reply 2.) Together, these facts are sufficient to establish a relationship between plaintiff's injuries and his status in the United States Army. See Stanley, 483 U.S. at 669; Stewart, 90 F.3d at 105.

6

Therefore, under the Feres doctrine, plaintiff's Bivens claim is barred as incident to his military service.

In challenging application of the Feres doctrine, plaintiff asserts that he "was not engaged in any military duties, [defendants'] actions were non-military in that they are specifically prohibited by U.C.M.J. and the U.S. Constitution, and [were] not part of any military decision making." (Resp. to Defs.' Reply 2-3.) Based on the authorities cited above, however, the critical facts to application of Feres are not that defendants violated the law relevant to plaintiff's underlying Bivens claim, but rather that plaintiff was on active duty and treated for his injuries in a military hospital, individual defendants were members of the Army acting under their command structure, and most of the alleged incidents took place on base at Fort Bragg. See Appelhans, 877 F.2d at 311.

Additionally, plaintiff asserts that the Feres doctrine does not bar all suits brought by soldiers. Plaintiff cites to several cases outside of the Fourth Circuit to show that courts sometimes find the incident to service test is not met based on the alleged conduct of defendants. See, e.g., Overton v. New York Div. of Military & Naval Affairs, 373 F.3d 83 (2nd Cir. 2004); Lutz v. Sec'y of the Air Force, 944 F.2d 1477 (9th Cir. 1991); Durant v. Neneman, 884 F.2d 1350 (6th Cir. 1989); and Brown v. United States, 739 F.2d 362 (8th Cir. 1984). Plaintiff argues based on these cases that the alleged injuries in this case are actionable under Bivens and not barred as "incident to service."

The cases cited by plaintiff are inapposite. In Durant, the Sixth Circuit was examining whether or not to extend the incident to service doctrine to common law tort claims where the parties were in the military. Durant, 884 F.2d at 1352. Here, plaintiff asserts constitutional

7

violations under Bivens authority. (Compl. 1.) It has already been established by the Supreme Court that the incident to service test applies to Bivens claims. See Stanley, 483 U.S. at 669. Therefore, the court's reasoning in Durant is about when it is appropriate to use Feres is not relevant, as that court was interpreting a separate legal issue.

Similarly, in Overton the court focused its analysis on interpreting the scope of the Feres doctrine. Overton, 373 F.3d at 93-97. That plaintiff was a guard technician acting under a hybrid of civilian employment and military duty, and brought a claim under Title VII, which enjoys some limited immunity from the incident to service test. Id. Furthermore, the court ultimately found that Feres applied to bar the lawsuit despite the fact that defendants' actions were "reprehensible." Id. at 97. Here, plaintiff has not asserted a Title VII claim, so that a Title VII exception to Feres is not a legal issue in this case. (E.g., Compl. 1.) Furthermore, to the extent that Overton is factually analogous to the present case, it counsels toward barring the action under the incident to service test. Overton, 373 F.3d at 95-97.

Brown and Lutz are also inapposite. In Brown, the Eighth Circuit considered whether a claim brought under the FTCA for a mock lynching was barred by the incident to service test. Brown, 739 F.2d at 364. Plaintiff sued on behalf of Dan Briscoe, a member of the Nebraska Army National Guard, who was physically hoisted in the air with a noose around his neck and told he would be lynched. Id. The aggressors were all members of the Nebraska or Mississippi National Guard, who attacked Briscoe during a "holiday weekend drinking party" on the military base. Id. The court found that the United States and Briscoe's superior officers were protected by the Feres doctrine because the suit would interfere with military discipline structure. Id. at 369. The court found that the suit could continue, however, against the individual members of

8

the National Guard who assaulted Briscoe. Id. (noting that those defendants were not acting under orders or with permission from superiors, so that "the maintenance of the military disciplinary structure could hardly be furthered by the application of military immunity for the participants in this incident").

In this case, plaintiff asserts claims against the U.S. Army and his superior officers, which would be barred by the Feres doctrine under the military discipline structure rationale as explained in Brown. (Compl. 2-5.) Furthermore, plaintiff claims that all of the actions taken by those defendants in the infantry were under orders. (E.g., Compl. 7 (accusing some defendants of having "ordered the platoon to verbally assault and threaten the plaintiff to 'teach him a lesson'"); Compl. 14 (claiming that two defendants ordered others "to enter the plaintiff's off base housing . . . and remove his laptop").) Therefore, the reasoning in Brown that individuals acting outside the military disciplinary structure could be held liable, does not apply in this case. Brown, 739 F.2d at 369.

Similarly, in Lutz, the Ninth Circuit found that individuals in the military acting outside of the chain of command were not protected by the Feres doctrine. Lutz, 944 F.2d at 1487 (noting that the Ninth Circuit has accepted Feres only "grudgingly").[2] Lutz was an Air Force officer whose office was broken into by three of her subordinates. Id. at 1479. Those defendants then disseminated correspondences they found in an effort to ruin Lutz's career. Id. This case is distinguishable from Lutz because the injuries were committed outside of the chain of command while the parties were off duty. Here, plaintiff and individual defendants were on active duty and defendants were either creating or acting upon orders for which plaintiff alleges injury.

---

[2]The Fourth Circuit's application of the Feres doctrine, as discussed above, is less hesitant than in the Ninth Circuit.

9

(Compl. 7-10, 12, 14.) The facts of this case are more analogous to <u>Stanley</u>, where the harm was incurred during the course of military decision making. 483 U.S. at 669. It is not the role of this court to get involved in the inner workings of the military when Congress has provided for exclusive avenues of relief. <u>Appelhans</u>, 877 F.2d at 311. Therefore, plaintiff has not met his burden of establishing subject matter jurisdiction under the facts as alleged, and the complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (DE # 41) is GRANTED. The plaintiff's motion for leave to respond to defendants' reply (DE # 53) is GRANTED and his response is noted. All other pending motions are DENIED as moot. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 31st day of October, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge

10

Case 5:11-cv-00461-FL   Document 54   Filed 10/31/12   Page 10 of 10